UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
CHRISTOPHER C. HERNANDEZ and
ANGELICA A. HERNANDEZ,
     Debtors.                       No. 7-10-12982 SS

MV INDUSTRIES, INC.,
A New Mexico Corporation,
and MICHAEL VIGIL,
     Plaintiffs,

v.                                   Adv. No. 10-1152 S

CHRISTOPHER C. HERNANDEZ and
ANGELICA A. HERNANDEZ,
     Defendants.

**MEMORANDUM OPINION ON DEFENDANTS'
MOTION TO DISMISS OR ALTERNATIVELY
FOR JUDGMENT ON THE PLEADINGS OR
<u>ALTERNATIVELY FOR SUMMARY JUDGMENT</u>**

In this adversary proceeding, Plaintiffs ("MVI") seek to hold a debt non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A), (a)(4) and/or (a)(6). Defendants have filed a Motion to Dismiss (doc 4) and then a Motion to Dismiss or Alternatively for Judgment on the Pleadings or Alternatively for Summary Judgment (doc 19 – "Motion"). For the reasons set forth below, the Court will grant Defendants' Motion for Summary Judgment.[1]

**<u>BACKGROUND</u>**

_____

[1] The Court has subject matter and personal jurisdiction pursuant to 28 U.S.C. §§1334 and 157(b); this is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I); and these are findings of fact and conclusions of law as may be required by Rule 7052 F.R.B.P.

MVI[2] filed this adversary proceeding on September 20, 2010 (doc 1). The adversary proceeding relates to a contract under which MVI, a licensed contractor, was to build a project known as the National Atomic History Museum in Albuquerque, New Mexico. (Doc 1, ¶ 22). The complaint contains the following "general allegations[3]", most of which were denied by the Defendants: MVI issued subcontracts to HDR[4], Chris Hernandez (the Debtor), Steve Aragon d/b/a Diversified Masonry, Angelica Romero and Shaun Schmidt. (The last three are apparently third parties unrelated to this litigation) (Id.; Id. at ¶ 6). There is pending in the United States District Court for the District of New Mexico a lawsuit filed in 2009 captioned <u>United States of America, For the Use of HDR Enterprises, LLC, ... Christopher Hernandez ... et al., v. MV Industries, Inc. ... et al.</u>. Debtors filed their

---

[2] The caption lists both MV Industries, Inc. and Michael Vigil as Plaintiffs. There is only one reference to Mr. Vigil in the complaint at paragraph 53, stating that he was damaged. Beyond that, the Court has no knowledge of who Mr. Vigil is or how he is connected to this litigation.

[3] The Memorandum does not make reference to the jurisdictional or duplicative allegations.

[4] HDR Enterprises ("HDR") is a New Mexico corporation and a licensed New Mexico contractor. (Defendants admit only that HDR formerly held a license). (Doc. 1, ¶ 19). The complaint also alleges: Christopher Hernandez is an "officer" of HDR and that he may hold a legal interest in the company; (Id. ¶ 11) Christopher Hernandez had the ability to bind HDR to contracts, payment decisions and daily operations; (Id. ¶ 13); and Christopher Hernandez held actual and apparent authority and acted in his corporate as well as individual capacities. (Id. ¶ 14).

Chapter 7 case on June 14, 2010 and listed a claim against MVI for $400,000 on Schedule B and claimed a portion exempt on Schedule C.  (Id. ¶¶ 1, 2).  Schedule B listed no ownership interest in HDR.  (Id. ¶ 12).

Paragraph 15 alleges: "For purposes of reference, MVI makes its allegations against Christopher Hernandez and HDR collectively, unless the context requires otherwise."  The complaint also generally alleges that HDR and Hernandez failed to perform their work (Id. ¶ 27); and that HDR failed to pay suppliers for materials provided to the project despite the fact that MVI paid HDR for materials, and that HDR assigned a portion of its subcontract to another contractor in violation of the contract and without notice to MVI and then failed to pay that subcontractor (Id. ¶¶ 29, 30, 31); HDR invoiced MVI for the work performed (Id. ¶ 32).

The rest of the complaint, ¶¶ 33-55, contains a single count called "Conversion, fraud, misrepresentation."  Paragraphs 34 and 35 allege that HDR and Hernandez received payment of all invoices and did not pay all of the suppliers as required under the terms of the subcontract.  Paragraph 36 cites In re Romero, 535 F.2d 618 (10th Cir. 1976) and quotes three paragraphs from the opinion.[5]  Paragraph 37 claims that the failure of HDR and

_____

[5] Other than Romero, neither side has cited any statutory or case authority to the Court in the Motion or any supporting or
(continued...)

Hernandez to pay suppliers was intentional and willful.

Paragraph 38 claims that under In re Romero, Hernandez's debt

should be nondischargeable.  Paragraph 39 alleges that the

failure to pay suppliers was not based on any lawful defense to

the contract.  Paragraph 40 states that HDR and Hernandez did not

complete the work "it/they" were paid for in a manner consistent

with what was required.  Paragraphs 41-43 allege only

shortcomings of HDR and makes reference to an unidentified

counterclaim, perhaps in the District Court litigation.

Paragraph 44 states that MVI suffered $186,115.14 in damages.

Paragraphs 45 and 46 allege that "HDR and Hernandez" failed to

pay subcontractors for work they did, and that MVI had to pay

them.  Paragraphs 47 and 48 allege that Hernandez represented to

Plaintiffs that "he would handle the lack of payment(s)" and that

MVI relied on Hernandez's written[6] and verbal misrepresentations.

Paragraph 49 claims damages to MVI's business reputation by the

willful, wanton and malicious acts of HDR and Hernandez.

Paragraph 52 and 53 allege that the contract breaches and

omissions were willful, wanton, intentional and deliberate and

_____

[5](...continued)
opposing papers.

[6]No specific writing is mentioned as containing a false
statement anywhere in the complaint or Court record up to this
point.  The only reference to anything written was the contract
identified in the complaint, but that has never been submitted as
an exhibit. And, the complaint does not state that the contract
contains a false statement.

Page -4-

but for them, MVI and Vigil would not have suffered damages. Paragraph 54 alleges that HDR and Hernandez' failure to pay is evidence of fraud, conversion and intentional misrepresentation. Paragraph 55 asserts that Angelica Hernandez has the same culpability as her spouse due to her active knowledge of the commissions and omissions cited herein.

In lieu of an answer, Defendants filed a Motion to Dismiss (doc 4). Defendants (gratuitously) admitted, for the purpose of the motion only[7], that HDR is a New Mexico corporation (¶ 9 of complaint), that Christopher Hernandez is an officer of HDR (¶ 11), that HDR is a licensed New Mexico contractor (¶ 19), that the dispute involves a subcontract (¶ 22), and that MVI entered into a subcontract with HDR on July 29, 2008 which required HDR to complete work within the scope of the contract (¶¶ 25, 26). Defendants argue that there is no allegation that Christopher Hernandez signed the contract in either a representative or individual capacity, and that there is no allegation that Christopher Hernandez had any obligation to perform under the

---

[7]In ruling on a motion to dismiss, the court must assume the allegations are true. <u>Foxworth Gailbraith Lumber Co. v. Manelos (In re Manelos)</u>, 337 B.R. 409, 412 (Bankr. D. N.M. 2006). However, while a complaint attacked under Rule 12(b)(6) does not need detailed factual allegations, it does need to provide the grounds for relief, which requires more than labels and conclusions or a formulaic recitation of the elements of the cause of action. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)(citations omitted). And, the complaint must contain enough factual allegations to raise the right to relief above the speculative level. <u>Id.</u>

contract. They also argue that there is no allegation that
Christopher Hernandez misused or ignored the corporate structure
of HDR, or committed any act sufficient to ignore the corporate
existence of HDR. Defendants claim that even if all allegations
in the complaint were true, all that it does is establish a claim
against HDR, not them. Because the complaint fails to establish
a claim against Hernandez, there is no nondischargeable claim,
they assert.

Plaintiffs responded. (Doc 13). First, Plaintiffs refer to
paragraphs 13 and 14 of the complaint which state that Hernandez
had the ability to bind HDR to contracts, and the ability to make
payment decisions, and that he acted in both his corporate and
individual capacities. They also refer to paragraph 35 which
alleges that HDR and Hernandez did not pay the suppliers.
Finally, they claim that under In re Romero persons other than
the licensed general contractor risk individual liability.

Second, Plaintiffs dispute that the complaint does not
allege sufficient acts to disregard the corporate existence of
HDR. They claim that: the fact that Hernandez was an officer,
that he had actual and apparent authority, that he made false
representations, that Plaintiffs dealt with him in both his
representative and individual capacities, and that they relied on
statements and representations, and were harmed as a result of
his individual acts and omissions, is enough.

The Court heard arguments on the motion to dismiss and denied it without prejudice and ordered that Defendants had until June 15, 2011 to re-file the Motion to Dismiss and/or a Motion for Summary Judgment that specifically addressed issues raised in Plaintiffs' response. (Order, doc 17).

Defendants filed an Answer (doc 18) and timely filed the Motion to Dismiss or Alternatively for Judgment on the Pleadings or Alternatively for Summary Judgment ("Motion")(doc 19), which is the subject of this Memorandum. Plaintiffs did not file a response.

**SUMMARY JUDGMENT**

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Bankruptcy Rule 7056(a)[8]. In

---

[8]Bankruptcy Rule 7056 incorporates Fed.R.Civ.P. 56. That Rule provides, in part:
> (a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.
> ...
> (c) Procedures.
> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>     (A) citing to particular parts of materials in the record, including depositions, documents,
>                                        (continued...)

Case 10-01152-s   Doc 20   Filed 09/01/11   Entered 09/01/11 11:35:26 Page 7 of 31

determining the facts for summary judgment purposes, the Court

may rely on affidavits made with personal knowledge that set

forth specific facts otherwise admissible in evidence and sworn

or certified copies of papers attached to the affidavits.

Fed.R.Civ.P. 56(c)(1). When a motion for summary judgment is

---

[8](...continued)
electronically stored information, affidavits or
declarations, stipulations (including those made
for purposes of the motion only), admissions,
interrogatory answers, or other materials; or
(B) showing that the materials cited do not
establish the absence or presence of a genuine
dispute, or that an adverse party cannot produce
admissible evidence to support the fact.
(2) Objection That a Fact Is Not Supported by
Admissible evidence. A party may object that the
material cited to support or dispute a fact cannot be
presented in a form that would be admissible in
evidence.
(3) Materials Not Cited. The court need consider only
the cited materials, but it may consider other
materials in the record.
(4) Affidavits or Declarations. An affidavit or
declaration used to support or oppose a motion must be
made on personal knowledge, set out facts that would be
admissible in evidence, and show that the affiant or
declarant is competent to testify on the matters
stated.
...
(e) Failing to Properly Support or Address a Fact. If
a party fails to properly support an assertion of fact
or fails to properly address another party's assertion
of fact as required by Rule 56(c), the court may:
(1) give an opportunity to properly support or address
the fact;
(2) consider the fact undisputed for purposes of the
motion;
(3) grant summary judgment if the motion and supporting
materials--including the facts considered
undisputed--show that the movant is entitled to it; or
(4) issue any other appropriate order.

Page -8-

made and supported by affidavits or other evidence, an adverse
party may not rest upon mere allegations or denials. Id.
Rather, "Rule 56(e) ... requires the nonmoving party to go
beyond the pleadings and by her own affidavits, or by the
'depositions, answers to interrogatories, and admissions on
file,' designate 'specific facts showing that there is a genuine
issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324
(1986). "Rule 56(e) permits a proper summary judgment motion to
be opposed by any of the kinds of evidentiary materials listed in
Rule 56(c), except the mere pleadings themselves." Id. The
court does not try the case on competing affidavits or
depositions; the court's function is only to determine if there
is a genuine issue for trial. Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 249 (1986).

In ruling on a motion for summary judgment, the trial court
views the evidence and draws reasonable inferences therefrom in
the light most favorable to the nonmoving party. Mountain
Highlands, LLC v. Hendricks, 616 F.3d 1167, 1169-70 (10th Cir.
2010)(citing Garrison v. Gambro, Inc., 428 F.3d 933, 935 (10th
Cir. 2005)). On those issues for which it bears the burden of
proof at trial, the nonmovant "must go beyond the pleadings and
designate specific facts so as to make a showing sufficient to
establish the existence of an element essential to [its] case in
order to survive summary judgment." Id. at 1170 (quoting Cardoso

v. Calbone, 490 F.3d 1194, 1197 (10th Cir. 2007)) (internal quotation marks omitted). "If a party that would bear the burden of persuasion at trial does not come forward with sufficient evidence on an essential element of its prima facie case, all issues concerning all other elements of the claim and any defenses become immaterial." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998)(citing Celotex, 477 U.S. at 322-23). "[F]ailure of proof of an essential element renders all other facts immaterial." Mountain Highlands, 616 F.3d at 1170 (quoting Koch v. Koch Indus., Inc., 203 F.3d 1202, 1212 (10th Cir.), cert. denied, 531 U.S. 926 (2000)).

New Mexico LBR 7056-1 governs summary judgment motions. It provides, in part:

> The memorandum in support of the motion shall set out as its opening a concise statement of all of the material facts as to which movant contends no genuine issue exists. The facts shall be numbered and shall refer with particularity to those portions of the record upon which movant relies.
>
> A memorandum in opposition to the motion shall contain a concise statement of the material facts as to which the party contends a genuine issue does exist. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies, and shall state the number of the movant's fact that is disputed. All material facts set forth in movant's statement that are properly supported shall be deemed admitted unless specifically controverted.

**FACTS**

Page -10-

Because Plaintiffs did not respond to Defendants' Motion, all facts listed in the Statement of Undisputed Facts are deemed admitted. The Statement contains three facts, all properly supported by an affidavit and attached documents.

1. Hernandez is not a licensed contractor.

2. Hernandez is not the qualifying party for the contractor's license.

3. Hernandez is not an officer of HDR Enterprises, LLC.

**THE STATUTE**

Plaintiffs seek relief under Bankruptcy Code sections 523(a)(2)(A), (a)(4) and (a)(6). Those sections provide:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt--
> ...
>> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
> ...
>> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;
> ...
>> [or]
>> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

Page -11-

**DEFENDANTS' ARGUMENTS**

Defendants argue that given the three undisputed facts above, and Plaintiffs' failure to allege crucial elements of each of the causes of action, they cannot prevail on their complaint.

**1.   DEFENDANTS ARGUE THAT THE COMPLAINT FAILS TO ALLEGE A DEBT**

First, Defendants argue that the complaint fails to allege that Christopher Hernandez had any obligation to perform under the contract, and fails to allege that the corporate structure of HDR should be disregarded.  The Court disagrees, in part. Paragraph 6 of the complaint states, in part, "In the summer of 2008 MVI contracted with ... Chris Hernandez ..."  (Doc 1 ¶ 6). This is sufficient to state an element of a contract claim against Chris Hernandez.

The Court agrees that there are no allegations in the complaint that would suggest that Christopher Hernandez should be made liable for HDR's debts.  See Scott v. AZL Resources, Inc., 107 N.M. 118, 121, 753 P.2d 897, 900 (1988):

> A basic proposition of corporate law is that a corporation will ordinarily be treated as a legal entity separate from its shareholders.  Shareholders can thus commit limited capital to the corporation with the assurance that they will have no personal liability for the corporation's debt. ... Only under special circumstances will the courts disregard the corporate entity to pierce the corporate veil holding individual shareholders or a parent corporation liable.  This is done where the corporation was set up for fraudulent purposes or where to recognize the corporation would result in injustice.  Scott Graphics, Inc. v. Mahaney, 89 N.M. 208, 211, 549 P.2d 623, 626 (Ct.App.), cert. denied, 89 N.M. 322, 551 P.2d 1369 (1976).

Page -12-

New Mexico decisions have held that piercing the corporate veil is an equitable remedy. Three requirements must be satisfied to obtain this relief: a showing of instrumentality or domination, improper purpose and proximate causation. <u>Harlow v. Fibron Corp.</u>, 100 N.M. 379, 382, 671 P.2d 40, 43 (Ct.App.), <u>cert. denied</u>, 100 N.M. 439, 671 P.2d 1150 (1983).

The complaint fails to allege that the corporation was set up for a fraudulent purpose, that Christopher Hernandez dominated the corporation or treated it as his personal asset. Furthermore, in New Mexico, officers are generally not liable for contract violations by a corporation. <u>Two Old Hippies, LLC v. Catch the Bus, LLC</u>, ____ F. Supp.2d ____, 2011 WL 831302 at *13 (D. N.M. 2011)(quoting <u>Kreischer v. Armijo</u>, 118 N.M. 671, 673, 884 P.2d 827, 829 (Ct.App. 1994)). <u>See also Crossingham Trust v. Baines, (In re Baines)</u>, 337 B.R. 392, 407 (Bankr. D. N.M. 2006)(Stating the rule that a corporate officer or shareholder, by virtue of that status alone, is not liable for the acts or debts of the corporation.)(Citing <u>In re Tinker</u>, 311 B.R. 869, 874-75 (Bankr. D. Colo. 2004)). And, despite a complaint's characterization of a cause of action as a tort the court should look at the "gravamen of the complaint" to determine if it is essentially a breach of contract case. <u>Id.</u> Similarly, MVI's complaint is really a breach of contract case and there are no allegations that suggest that Christopher Hernandez should be personally liable.

In summary, the Court finds that there is a material question of fact as to whether the Defendants, personally, owe a debt. However, there is no question of fact that Defendants are not liable for HDR's debts under a piercing the corporate veil theory. Because the Court finds a material question of fact as to their personal liability, the Court will address Defendants' other arguments.

## 2.   THE SECTION 523(a)(2)(A) CLAIM

Second, Defendants argue that the complaint fails to allege any misstatements of fact to support a fraud claim[9]. The Court

---

[9]Section 523(a)(2)(A) makes certain common-law torts nondischargeable in bankruptcy. Field v. Mans, 516 U.S. 59, 69 (1995). "The operative terms in § 523(a)(2)(A), ... 'false pretenses, a false representation, or actual fraud,' carry the acquired meaning of terms of art. They are common-law terms, and, ... in the case of 'actual fraud,' ... they imply elements that the common law has defined them to include." Id. Therefore, the bankruptcy court should look to the common law of torts for the elements of fraud. The Field court stated that the most widely accepted distillation of the common law of torts was the Restatement (Second) or Torts (1976). ("Restatement"). Id. at 70.
The Restatement § 525 provides:

§ 525. Liability For Fraudulent Misrepresentation.
One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.

The Court of Appeals for the Tenth Circuit recently stated what a plaintiff must prove to succeed under Section 523(a)(2)(A) in the Restatement § 525 context:

(continued...)

agrees with Defendants.  The only paragraph that explicitly

states the content of a representation is paragraph 47: "At all

times material, Hernandez represented to Plaintiffs that he would

handle the lack of payment(s) cited herein."  This representation

was a promise as to future events.

A promise to perform in the future does not establish a

cause of action for fraud or deceit unless the plaintiff alleges

and proves that there was a present intent not to perform when

the promise was made[10].  Yunkers v. Whitcraft, 57 N.M. 642, 647,

261 P.2d 829, 832 (1953)("[T]here is no tangible evidence to show

---

[9](...continued)
In order to establish a non-dischargeable claim
under this subsection, a creditor must prove the
following elements by a preponderance of the evidence:
"The debtor made a false representation; the debtor
made the representation with the intent to deceive the
creditor; the creditor relied on the representation;
the creditor's reliance was reasonable; and the
debtor's representation caused the creditor to sustain
a loss." Fowler Bros. v. Young (In re Young), 91 F.3d
1367, 1373 (10th Cir. 1996).

Johnson v. Riebesell (In re Riebesell), 586 F.3d 782, 789 (10th
Cir. 2009).  The Riebesell Court also acknowledged that in Field
v. Mans, 516 U.S. 59, 74-75 (1995) the Supreme Court ruled that
only justifiable, not reasonable, reliance was required.  Id. at
791-92.  In other words, the creditor must prove:
• a false representation,
• made with the intent to deceive,
• on which the creditor actually and justifiable relied, and
• the representation caused the creditor to sustain a loss.


[10]Also, the substance of the cited statement suggests that
the damage had already been done.  The Court fails to see how a
representation made after the fact could have proximately caused
earlier damage.

Page  -15-

the defendants formed a decision not to continue with their agreement which they did not disclose to the plaintiff while under duty to do so.")  Accord Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1186 (3rd Cir. 1993)(Applying New Jersey law).  See also Restatement § 530(1)("A representation of the maker's own intention to do or not to do a particular thing is fraudulent if he does not have that intention.") and cmt. d:

> The intention that is necessary to make the rule stated
> in this Section applicable is the intention of the
> promisor when the agreement was entered into.  The
> intention of the promisor not to perform an enforceable
> or unenforceable agreement cannot be established solely
> by proof of its nonperformance, nor does his failure to
> perform the agreement throw upon him the burden of
> showing that his nonperformance was due to reasons
> which operated after the agreement was entered into.

Therefore, paragraph 47, by itself, is insufficient to establish fraud and is not even evidence of fraud.  And, the complaint makes no allegation that Hernandez lacked the intention to perform when he made the statement.

Furthermore, the complaint fails to comply with Fed.R.Civ.P. 9, made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 7009.  That rule states, in relevant part:

> Rule 9. Pleading Special Matters
> ...
> (b) Fraud or Mistake; Conditions of Mind.  In alleging
> fraud or mistake, a party must state with particularity
> the circumstances constituting fraud or mistake.
> Malice, intent, knowledge, and other conditions of a
> person's mind may be alleged generally.

The United States District Court for the District of New Mexico recently ruled on a Motion to Dismiss for failure to plead with specificity under Rule 9(b). <u>Two Old Hippies</u>, ___ F. Supp.2d ___, 2011 WL 831302 (D. N.M. 2011). In denying the motion, the court stated:

> The Court agrees that the Complaint adequately states the alleged misrepresentation. "At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." <u>United States ex rel. Schwartz v. Coastal Healthcare Group, Inc.</u>, 232 F.3d 902, at *3. <u>See Midgley v. Rayrock Mines, Inc.</u>, 374 F.Supp.2d [1039 (D. N.M. 2005)] at 1047 ("To survive a motion to dismiss, an allegation of fraud must 'set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" (quoting <u>Schwartz v. Celestial Seasonings, Inc.</u>, 124 F.3d [1246 (10th Cir. 1997)] at 1252)). "On the other hand, rule 9(b) does not require specific knowledge regarding the defendant's state of mind." <u>Midgley v. Rayrock Mines, Inc.</u>, 374 F.Supp.2d at 1047. Counts III, IV, V, and VII of the Complaint are predicated upon allegations that the Defendants willfully and intentionally made misrepresentations of fact to Two Old Hippies. ...
>
> Two Old Hippies adequately pleads the alleged misrepresentation in the Complaint. The Complaint alleges that the Defendants told Two Old Hippies that ... [detailed factual allegations]. ... The Complaint thus states what was said, by whom, approximately when and in what context. This factual particularity satisfies rule 9(b)'s pleading requirements.

<u>Id.</u> at *6. <u>See also</u> 5A Wright, Miller, Kane and Marcus, Fed. Prac. & Proc. Civ. § 1297 (3d ed.)("[T]he reference to 'circumstances' in the rule is to matters such as the time, place, and contents of the false representations or omissions, as well as the identity of the person making the misrepresentation

or failing to make a complete disclosure and what that defendant obtained thereby.")

When there are more than one alleged fraudfeasor Rule 9 is especially applicable; without specifying who made which fraudulent statement or in what circumstance, a defendant cannot prepare a defense. In contrast, Plaintiffs' complaint ¶ 15 specifically states that all allegations apply to both Christopher Hernandez and HDR[11]. Ignoring the fact that no misrepresentations are actually alleged, if there had been, the complaint would be subject to dismissal for failure to plead with specificity. See Two Old Hippies, LLC, 2011 WL 831202 at *14 (A complaint is subject to dismissal for failure to provide fair notice if it fails to differentiate among the various defendants and merely attributes actions to "the defendants.")(quoting Robbins v. Oklahoma, 519 F.3d 1242, 1249-50 (10th Cir. 2008)).

Finally, the complaint does not allege that the Defendants intended to deceive. It merely alleges that Plaintiffs relied, but does not state how they relied, or that their reliance was justifiable. (Doc 1, ¶ 48). And, it boldly alleges that "but for" Defendants' actions, MVI and Vigil would not have suffered the damages. (Id., ¶ 53). These statement are conclusory and alone they do not satisfy the required allegations of the

---

[11]The Court recognizes that HDR is not a co-defendant in this adversary, but the complaint alleges fraudulent activity by both HDR and Hernandez.

elements of reliance or cause/ proximate cause.  See  Twombly,
550 U.S. at 555 (One needs more than a formulaic recitation of
the elements of the cause of action.)

In summary, the complaint alleges one representation, but
does not explicitly claim that it was false.  The complaint makes
other general allegations about misrepresentations[12] but fails to
identify them at all, much less with specificity.  Intent,
reliance, cause and proximate cause are not specified.  The Court
finds that the fraud claims must be dismissed.

**3.**    **THE SECTION 523(a)(6) CLAIM**

Third, Defendants argue that the complaint fails to allege
that either HDR or Hernandez ever intended any injury to MVI.
Defendants claim that this defeats a claim under section
523(a)(6).

Section 523(a)(6) states that a debt for willful and
malicious injury by the debtor to another entity or to the
property of another entity is nondischargeable.  "Willful" for
purposes of section 523(a)(6) means "deliberate or intentional."

_____

[12]E.g., ¶ 48 ("MVI relied on Hernandez' written and verbal
misrepresentations."); ¶ 54 ("HDR and Hernandez' failure to pay
the required subcontractor, vendor invoices, and the additional
completion costs, are evidence of and based in fraud, conversion
and intentional misrepresentation.") However, nowhere does the
complaint list a specific misrepresentation, when or by whom it
was made, its contents, why it was false, what actions by
Plaintiffs demonstrate that it was actually relied on, or how it
caused damage and the specific evidence of damage caused by the
specific representation.

Page  -19-

<u>Tso v. Nevarez (In re Nevarez)</u>, 415 B.R. 540, 545 (Bankr. D. N.M. 2009).

The complaint, ¶ 37, alleges that the failure to pay suppliers was "intentional and willful."  Paragraph 49 states, in conclusory terms, that Plaintiffs' business reputation was damaged by the "willful, wanton and malicious acts and omissions" of HDR and Hernandez.  Paragraph 52 states that the "breach(es) and omissions" were willful, wanton and deliberate.  Paragraph 53 claims that "but for" the malicious, willful and intentional acts and omissions, the Plaintiffs would not have suffered damages.  However, whether the Defendants acted willfully and maliciously is ultimately irrelevant because Plaintiffs have failed to allege all of the elements of any tort that could have been committed willfully and maliciously.

The complaint does not specify exactly what the Defendants did that was willful and malicious.  A thorough review of the entire complaint suggests that it might be one of two claims: 1) willful and malicious injury resulting from a defamation of Plaintiffs' business reputation, or 2) a willful and malicious conversion of Plaintiffs' money.  Each will be discussed.

**A.   <u>BUSINESS REPUTATION</u>**

The law of defamation of reputation is well established
in New Mexico. Reputation is what a person is thought
to be, as distinguished from character, which is what a
person is.  <u>Proper v. Mowry</u>, 90 N.M. 710, 568 P.2d 236
(Ct.App.1977).  Restatement (Second) of Torts, s 559,
states as follows:

Page  –20–

> Defamatory Communications Defined
>
> A communication is defamatory if it tends so
> to harm the reputation of another as to lower
> him in the estimation of the community or to
> deter third persons from associating or
> dealing with him.

Dominquez v. Stone, 97 N.M. 211, 213, 638 P.2d 423, 425 (Ct.App.
1981).

Plaintiffs allege, at ¶ 49 that their business reputations
were damaged by Defendant's acts.  However, the complaint fails
to allege the elements of a defamation claim.  In addition, the
complaint does not allege, and the Plaintiffs have offered no
proof, that the business had a reputation to begin with.  See
Hue-Mar, LLC v. Freedomroads Operations Co., LLC, 2008 WL 2517173
at *3 n.3 (W.D. La. 2008)(When seeking damages for loss of
business reputation, the business must prove that it had a good
reputation and must show how the business reputation was
damaged.)

The jury instructions, UJI 13-1002(B) NMRA, state the nine
elements a plaintiff must prove to recover for defamation:

    (1)  The defendant published the communication; and
    (2)  The communication contains a statement of fact;
         and
    (3)  The communication was concerning the plaintiff;
         and
    (4)  The statement of fact was false; and
    (5)  The communication was defamatory; and
    (6)  The person[s] receiving the communication
         understood it to be defamatory; and
    (7)  The defendant [knew that the communication was
         false or negligently failed to recognize that it
         was false] [or] [acted with malice]; and

    (8)   The communication caused actual injury to the plaintiff;[13] and

    (9)   The defendant abused [its] privilege to publish the communication.

See also Cory v. Allstate Insurance, 583 F.3d 1240, 1243 (10th Cir. 2009)("Under New Mexico law, the elements of a defamation action include: a defamatory communication, published by the defendant, to a third person, of an asserted fact, of and concerning the plaintiff, and proximately causing actual injury to the plaintiff.")(citing Newberry v. Allied Stores, Inc., 108 N.M. 424, 429, 773 P.2d 1231, 1236 (1989)).

    The cases make clear that a defamation plaintiff must specifically identify the defamatory statements. Weise v. Washington Tru Solutions, L.L.C., 144 N.M. 867, 875-76, 192 P.3d 1244, 1252-53, 2008-NMCA-121 at {21} ("Although Plaintiffs generally claim that Marvin was defamed, the amended complaint does not specifically identify which statements defamed Marvin.") (Citing Andrews v. Stallings, 119 N.M. 478, 485, 892 P.2d 611, 618 (Ct.App. 1995)). See also Coronado Credit Union v. KOAT

---

[13] Rule 13-1002(B)(8) actually reads "The communication caused actual injury to the plaintiff's reputation; and". In Smith v. Durden, 148 N.M. 679, 683, 241 P.3d 1119, 1123, 2010-NMCA-097 at {12}, cert. granted, 149 N.M. 65, 243 P.3d 1147, 2010-NMCERT-10 (2010), the Court of Appeals suggested that subsection 8 of the instruction be changed to the language in the text above to reflect the proper statement of the law regarding the tort of defamation in New Mexico. That change has not yet been implemented. It is not materially relevant in this case.

Television, Inc., 99 N.M. 233, 239, 656 P.2d 896, 902 (Ct.App. 1982):

> With the exception of the statements discussed above, Coronado did not plead specifically any other language in the broadcast alleged to have been defamatory, but instead made only vague, general references to the false nature of the entirety of the broadcast; therefore, summary judgment was proper as to the other portions of the broadcast. Plaintiff has failed to sustain its burden in response to KOAT-TV's motion and come forward and show the existence of genuine factual issues as to other allegedly untrue statements which were alleged in its complaint and which were not either substantially true or outside the claims of privilege asserted by KOAT-TV warranting summary judgment as a matter of law.

Plaintiffs' complaint in this case fails totally to allege the required elements of defamation. Without a defamation, there can be no willful and malicious defamation.

**B.**   **CONVERSION**

A debt for willful and malicious conversion of property can be held nondischargeable under section 523(a)(6). Hernandez v. Dorado (In re Dorado), 400 B.R. 304, 311 (Bankr. D. N.M. 2008). Under New Mexico law,

> Conversion is defined as the unlawful exercise of dominion and control over personal property belonging to another in exclusion or defiance of the owner's rights, or acts constituting an unauthorized and injurious use of another's property, or a wrongful detention after demand has been made. Bowman v. Butler, 98 N.M. 357, 648 P.2d 815 (Ct.App. 1982); Taylor v. McBee, 78 N.M. 503, 433 P.2d 88 (Ct.App. 1967).

Case 10-01152-s    Doc 20    Filed 09/01/11    Entered 09/01/11 11:35:26 Page 23 of 31

<u>Nosker v. Trinity Land Co.</u>, 107 N.M. 333, 337-38, 757 P.21d 803, 807-08 (Ct.App.), <u>cert. denied</u>, 107 N.M. 267, 755 P.2d 605 (1988).

> In order to recover damages for conversion, a plaintiff must have a right to immediate possession of the property. Such a right is generally based on some form of ownership interest. <u>See</u> <u>Stephen v. Phillips</u>, 101 N.M. 790, 689 P.2d 939 (Ct.App. 1984); <u>Aragon v. General Elec. Credit Corp.</u>, 89 N.M. 723, 557 P.2d 572 (Ct.App. 1976). Here, the evidence fails to establish that Nosker had a possessory or ownership interest in the equipment at the time of the alleged conversion.

<u>Id.</u>

The only allegations in the complaint that suggest Defendant obtained Plaintiffs' property are ¶ 30 ("MVI paid ... HDR ... for the materials."), ¶ 32 ("HDR and Hernandez invoiced MVI for work performed on the project and MVI paid for such work.") and ¶ 34 (HDR and Hernandez received payment for all of the invoices.") The complaint does not allege that Defendants took personal property from the Plaintiffs, or made injurious use of any property belonging to Plaintiffs, or that Plaintiffs asked for anything back from Defendants which they refused to turn over. In fact, the allegations state the opposite. The three listed paragraphs all state that MVI paid HDR on invoices and for materials.

> Generally, when there is no security interest involved, monies received by a debtor belong to the debtor and their subsequent use by a debtor is not considered embezzlement so that, in the absence of an identifiable fund of cash belonging to the creditor, a court is left with a simple breach of contract which is

dischargeable.  Here, there was no security agreement,
and once Plaintiffs paid the funds to Defendant, the
funds no longer belonged to Plaintiffs.

Dorado, 400 B.R. at 310 (Citations and internal punctuation
omitted.)  Therefore, when Plaintiffs paid the invoices, the
funds became Defendants' (or HDR's) property.  The definition of
conversion requires that the property converted belong to
another.  So, Defendants did not convert Plaintiffs' property.
See also Chiti v. Spectrum Golf, Inc. (In re Spectrum Golf,
Inc.), 2007 WL 7540965 at *7 (9th Cir. BAP 2007)("It is clear
that one cannot convert his own property.")(Citations omitted.);
Gadtke v. Bren (In re Bren), 284 B.R. 681, 698 (Bankr. D. Minn.
2002)("Payment of a contract price in exchange for the recipient
to undertake an obligation of future performance transfers the
ownership of the money to the recipient.")(Citations omitted.);
Id. ("One cannot embezzle one's own property."); Adamo v.
Scheller (In re Scheller), 265 B.R. 39, 54 (Bankr. S.D. N.Y.
2001)(("[O]ne cannot embezzle or convert one's own property.")
(Citations omitted.); United States Fire Insurance Co. v. Dean
(In re Dean), 9 B.R. 321, 324 (Bankr. M.D. Fla. 1981)("It is
self-evident that one cannot convert its own property and an
action for conversion can only be maintained by one who had, at
the time of the conversion, either a general or a special
ownership interest in the property.")(Decided under Bankruptcy
Act.)

In summary, there is no allegation and nothing in the record to suggest that Defendants converted any property of Plaintiffs. Therefore, there is no willful and malicious conversion that would be nondischargeable.

## **4.    THE SECTION 523(a)(4) CLAIM**[14]

Finally, Defendants argue that the complaint fails to allege that either of the Defendants were fiduciaries, that either of them defrauded anyone or defalcated, and that <u>Romero</u> simply does not apply to the facts alleged.  The Court agrees.

Plaintiffs argue that under <u>Romero</u> persons other than the licensed general contractor risk individual liability.  The Court does not read <u>Romero</u> to stand for that proposition.

---

[14] Debtors implicitly suggest in their Motion to Dismiss that the Court should not consider the (a)(4) claim because the caption of the complaint does not refer to (a)(4).  The general rule is that a complaint need not set forth its legal theories. <u>Zokari v. Gates</u>, 561 F.3d 1076, 1084 (10th Cir. 2009).  Rather, it must give the defendant fair notice of what the claim is and the grounds upon which it rests.  <u>Id.</u> (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007)).  Plaintiffs' complaint cites <u>Allen v. Romero (In re Romero)</u>, 535 F.2d 618 (10th Cir. 1976). In <u>Romero</u> the Court stated:
> The Supreme Court of New Mexico has stated that the purpose of the [New Mexico Construction Industries Licensing] Act is to provide "a comprehensive method for the licensing and control of contractors in order to protect the public from either irresponsible or incompetent contractors". <u>Peck v. Ives</u>, 84 N.M. 62, 499 P.2d 684 (1972).  In our view, s 67-35-26, <u>supra</u>, clearly imposes a fiduciary duty upon contractors who have been advanced money pursuant to construction contracts.

The Court finds that this citation provided adequate notice to Defendants that a claim under § 523(a)(4) was being made.

In Romero, the Court of Appeals started its reasoning by finding that the term "fiduciary capacity" as used in § 17(a)(4) of the Bankruptcy Act, the predecessor to § 523(a)(4) of the Bankruptcy Code, connected the idea of "trust or confidence" which arises <u>whenever one's property is placed in the custody of another</u>.  535 F.2d at 621 (Citations omitted)(Emphasis added.) And, § 17(a)(4) applied only to technical trusts, not those which the law implied from a contract.  <u>Id.</u> (Citations omitted). Finally, the Court recognized that the fiduciary relationship had to exist prior to the creation of the debt in controversy.  <u>Id.</u> (citing <u>Davis v. Aetna Acceptance Co.</u>, 293 U.S. 328 (1934)).

The court then analyzed the licensing scheme established by the New Mexico statutes dealing with contractors and found that the statutes imposed a fiduciary duty upon <u>contractors</u> that have been <u>advanced money</u> pursuant to construction contracts.  <u>Id.</u> (Emphasis added.)  It also pointed out that the statute imposed duties upon the contractor before he had any dealings with a particular owner, so the fiduciary duty arose independent of any later debt.  <u>Id.</u> at 622.[15]

---

[15] The remainder of the <u>Romero</u> opinion deals with the fraud claims raised by Allen and sufficiency of evidence questions.  In the case before this Court, the Defendants have already established in their Motion for Summary Judgment that fraud is not an issue.  Therefore, the remainder of <u>Romero</u>, including the lengthy quotations by Plaintiffs, are simply not relevant.
It is interesting to note, however, that the <u>Romero</u> Court reduced the damage figure by amounts it called "consequential
(continued...)

Page -27-

Case 10-01152-s   Doc 20   Filed 09/01/11   Entered 09/01/11 11:35:26 Page 27 of 31

Therefore, the lesson of Romero is that the New Mexico statutes impose a fiduciary duty on licensed contractors to hold money advanced to them by owners of properties and apply that money as required by statute. See also Foxworth Galbraith Lumber Co., Inc. v. Manelos (In re Manelos), 337 B.R. 409, 413 (Bankr. D. N.M. 2006)("The creditor/plaintiff in Allen v. Romero was the owner of the project, not the subcontractor or supplier to the debtor/contractor. The duty imposed by the relevant New Mexico statute, N.M.S.A.1978 § 60-13-23(F), as analyzed in Allen v. Romero, ran from the contractor to the property owner."); and see Id. at 414 ("[T]he Court remains unpersuaded that N.M.S.A.1978 § 60-13-23(F) should be construed to constitute a technical trust imposed by statute upon contractors to create a fiduciary duty owed by the contractor to subcontractors and suppliers that would fall within the meaning of 11 U.S.C. § 523(a)(4)."); and see Baines, 337 B.R. at 404 ("[T]he New Mexico statute imposes a

---

[15](...continued)
damages" for inconvenience, diversion of efforts and mental suffering. It stated "This claim is presented without cogent theory." Without expressing an opinion one way or the other, MVI's and Mr. Vigil's claims for damage to business reputation in what is essentially a contract claim might be unallowable consequential damages. See Stancil V. Mergenthaler Linotype Co., 589 F. Supp. 78, 85 (D. Hi. 1984)("[T]his Court adopts the majority view that damages for injury to reputation are not properly awardable in a breach of contract suit."); O'Leary v. Sterling Extruder Corp., 533 F.Supp. 1205 (D. Wis. 1982)("The courts seem to be in general agreement that damages for injury to reputation are not properly awardable in a breach of contract suit.")(Citing cases.)

fiduciary relationship on contractors who receive funds intended for a specific purpose.”).  Therefore, Plaintiffs’ reliance on Romero is misplaced.  Defendants were not contractors and Plaintiffs were not owners.

Plaintiffs’ argument that Romero extends liability to third parties is also unfounded.  In Romero the defendant was, in fact, a licensed contractor.  Romero, 535 F.2d at 621 (The issue was “whether Romero acted in a fiduciary capacity in his dealings as a general contractor with Allen.”).  If Defendant were a licensed contractor and the qualifying party for HDR, Plaintiff would have a colorable argument.  See Baines, 337 B.R. at 406:

> [A]lthough the contract was between Plaintiffs and the
> Defendants' corporation, Building Unlimited, Robert
> Baines can nevertheless be held personally liable.  It
> is undisputed that Robert Baines was the qualifying
> party for the contractor's license issued to Building
> Unlimited.  Under New Mexico law, [a] qualifying party
> who is issued a certificate of qualification is an
> individual who submits to be examined and who is
> responsible for the licensee's compliance with the Act.

(Citation and internal quotations omitted.)  However, the established facts are that Christopher Hernandez is not a licensed contractor and is not the qualifying party.

In summary, there is no trust.  At most, Plaintiffs paid invoices; they did not advance funds to be held in trust. Defendants were not fiduciaries.  There is no debt for defalcation as a fiduciary and the claim under section 523(a)(4) must be dismissed.

Page -29-

**CLAIMS AGAINST ANGELICA A. HERNANDEZ**

The only reference to Ms. Hernandez in the complaint is in ¶ 55. ("Upon information and belief, Angelica A. Hernandez has the same culpability as her spouse due to her active knowledge in the commissions and omissions cited herein.")   Mere knowledge, even if "active", of one's spouse's commissions or omissions, or of contract breaches or torts, is not an exception to dischargeability listed in Section 523.   While she may be liable under New Mexico community property law, the question of dischargeability is a matter of federal law.   Brown v. Felsen, 442 U.S. 127, 137 n.7 (1979)(The Supreme Court has the ultimate word on the construction of section 17 of the Bankruptcy Act. Bankruptcy is a federal statute and federal courts have the final word on the meaning of any terms contained therein.)

Under the Bankruptcy Code, a debt can be held nondischargeable only for actual fraud, not fraud imputed by law. See, e.g. J.C. Penny Co. Inc. v. Love (In re Love), 47 B.R. 213, 215 (Bankr. D. Mo. 1985).   See also Tsurukawa v. Nikon Precision, Inc. (In re Tsurukawa), 258 B.R. 192, 198 (9th Cir. BAP 2001):

> As previously noted, the legislative history to § 523(a)(2)(A) requires that the debtor actually intend to defraud the creditor and that the debt arise as a result of the fraud.  The cases that have attributed the wrongdoing of a party to a debtor have done so based on an agency theory.  As shown, most of these cases arise in the partnership arena.  Where no agency relationship exists, the courts have not generally imputed the wrongdoing of a nondebtor spouse to a debtor in holding a debt nondischargeable.  See e.g.,

[La Trattoria, Inc. v. Lansford (In re] Lansford), 822
F.2d [902 (9th Cir. 1987)] at 904-05 (refusing to
impute a nondischargeable debt to the debtor spouse
without evidence of an agency relationship); American
Charter Fed. Sav. & Loan Ass'n v. Harris (In re
Harris), 107 B.R. 210, 215 (Bankr. D.Neb.1989) (finding
no evidence that wife acted as her husband's agent and
holding husband's conduct non-imputable to wife based
on marital relationship alone). Certainly, spouses can
be partners in a business enterprise where agency
principles apply. However, the marital status alone
does not create an agency relationship.

Ms, Hernandez's debt (if any) is not nondischargeable.

**CONCLUSION**

The Court finds the Defendants Motion for Summary Judgment
is well taken and should be granted. The Court will enter an
Order in conformity with this Memorandum Opinion dismissing the
adversary complaint with prejudice.

Honorable James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket: September 1, 2011

Copies to:

Russell C Lowe
Attorney for Plaintiffs
PO Box 90536
Albuquerque, NM 87199-0536

Daniel J Behles
Moore, Berkson & Gandarilla, P.C.
Attorney for Defendants
P.O. Box 7459
Albuquerque, NM 87194

Page -31-